UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDELL BINION,

      Plaintiff,                                             Case No. 07-13443

vs.                                                          David M. Lawson
                                                           United States District Judge

ALEX GLOVER, SHERRY BURT,
JOHN OCWIEJA, PATRICIA                  Michael Hluchaniuk
CARUSO, DR. MIDDLEBROOK, and          United States Magistrate Judge
KIDNEY REPLACEMENT SERVICES,

      Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO COMPEL (Dkt. 65) AND DENYING
MOTION FOR MEDICAL RECORDS AS MOOT (Dkt. 73)**

    A.    Procedural History

The present complaint was filed by plaintiff Randell Binion, a prisoner in the custody of the State of Michigan, on August 17, 2007. (Dkt. 1). Pursuant to 42 U.S.C. § 1983, plaintiff seeks damages against defendants Sherry Burt, John Ocwieja, Patricia Caruso (employees of the Michigan Department of Corrections), along with Kidney Replacement Services, Inc. (KRS) and two of its employees, Alex Glover and Dr. Middlebrook, based on allegations that he was denied certain rights under the United States Constitution.

1

B.    <u>Factual Background</u>

Plaintiff is housed at the Southern Michigan Correctional Facility (JMF) in Jackson, Michigan. He worked in the dialysis services center operated by KRS and claims that, on October 13, 2006, around 10:30 p.m., his arm was stuck with a dirty needle that had been improperly disposed of in a waste paper basket, instead of the designated receptacle for biohazardous materials (i.e. sharps container, which is a plastic container, often red, with a biohazard symbol on the outside.). (Dkt. 1, p. 4). While emptying the waste paper basket, plaintiff felt a "prick" on his arm and then saw blood trickling down his forearm. *Id*. Plaintiff, along with defendant Glover and two dialysis technicians, observed the bloody needle. Id. According to plaintiff, defendant Glover informed a dialysis technician to take the bloody needle and place it in the proper container. *Id*. at 5.

Plaintiff's Step I grievance is dated October 18, 2006. (Dkt. 21, Ex. 1, p. 6). He claims that, in the course of his duties as a dialysis porter, while emptying a trash receptacle, he was punctured with a used needle and complains that "[p]rocedures require that needles not be placed in the common trash but rather placed in bio-needle containers for disposal." *Id*. He reported the incident to "C/O Hall" and "RN Alex Glover." *Id*. Plaintiff also complained that no follow-up tests were ordered and no investigation or critical incident report was prepared regarding this incident. (Dkt. 21, Ex. 1, p. 7). He further wrote that the "dialysis

unit is a guest of the MDOC and must follow all MDOC [policies] and procedures while providing health care to prisoners." *Id*. Plaintiff requested relief in the form of follow-up testing, the development of a needle disposal procedure, a copy of the critical incident report, and no retaliation for the grievance. *Id*. The MDOC does not attach a copy of any response to the Step I grievance.

Apparently, when plaintiff did not receive a response to the Step I grievance, he filed a Step II grievance on January 11, 2007. (Dkt. 21, Ex. 1, pp. 3-4). The copy of the first portion of the plaintiff's Step II grievance, as provided by the MDOC defendants, is illegible, but the second page states in part that "Respondent failure [sic] to respond to asserted claims within grievance JMF 06 10 2145 12z Constitutes the admission of guilt, negligence, and/or culpability." *Id*. at 4. After review of the Step II grievance, Alfred Jones (the respondent) wrote:

> A review of Mr. Binion's medical record reveals the needle stuck incident was reported to medical on 10-13-06. Grievant was sent to Foote Hospital Emergency Room and was evaluated for post exposure. On 10-14-06 Mr. Binion was returned from Foote ER. Mr. Binion was given post exposure medication.

(Dkt. 21, Ex. 1, p. 5). Mr. Jones concluded that "[a]ppropriate treatment was provided for grievant's health care issue. Based on the above, your grievance is considered denied at Step II." *Id*.

Plaintiff filed Step III appeal for two reasons. First, he stated that he did not receive post-exposure medication within one hour of exposure, as required by

3

MDOC Operating Procedure 03.04.120(B) and he has no idea whether he contracted any infectious diseases, including Hepatitis and HIV. (Dkt. 21, Ex. 1, p. 3). Second, he stated that the needle should not have been in the trash according to Operating Procedure 03.04.120-19 and JMF should have trained the dialysis staff to follow this procedure.[1] *Id.* MDOC personnel "N. Martin" prepared a response dated April 10, 2007, stating that "[b]ased upon the information gathered upon review, this matter will be reviewed further for quality assurance purposes." (Dkt. 21, Ex. 1, p. 2). The Step III response was signed and approved by "J. Armstrong" and copied to the Warden and the Regional Health Care Administrator. *Id.*

The MDOC grievance procedure sets forth the appropriate respondents for Step II, depending on the location and subject matter of the grievance. (Dkt. 21, Ex. 3, p. 5, § FF). For example, if a grievance alleges inadequate medical care, the Regional Health Administrator or designee is the appropriate Step II respondent. *Id.* Or, if a prisoner is housed in a CFA or SAI facility, the Warden or Deputy Warden is the appropriate respondent. *Id.* The Grievance Coordinator shall then ensure that "any additional investigation was completed as necessary for each Step II grievance accepted...." (Dkt. 21, Ex. 3, p. 6, § GG).

---

[1] It is unclear from the record whether the MDOC policies and procedures plaintiff identifies as "03.04.120(B)" and "03.04.120-19" are the same as or different from those produced by the MDOC defendants and attached to their motion for summary judgment, which are numbered 03.04.120 and 03.04.120C.

4

If a prisoner is not satisfied with the Step II response, he may file a Step III grievance with the Prisoner Affairs Section. (Dkt. 21, Ex. 3, p. 7, § HH). The Prisoner Affairs Section is the respondent for a Step III grievance on behalf of the MDOC Director. (Dkt. 21, Ex. 3, p. 7, § II). If a Step III grievance involves medical care or treatment, the Prison Affairs Section must forward any such grievance to the Bureau of Health Care Services (BHCS), who shall ensure that the grievance is investigated and a timely response provided. *Id*. The Manager of the Prisoner Affairs Section shall ensure that any additional investigation is completed as necessary for Step III. *Id*.

Plaintiff filed a motion to compel on July 29, 2009, claiming that none of the defendants had responded to his discovery requests. (Dkt. 65). In response, both the KRS defendants and the MDOC defendants each provided copies of the responses and objections that they claimed were previously provided to plaintiff. (Dkt. 70, 71). With plaintiff's receipt of answers and objections, at least at the time defendants filed their responses, along with plaintiff's reply, filed in September 2009, this motion to compel responses then evolved into a motion regarding the propriety of the MDOC defendants objections to plaintiff's discovery requests. (Dkt. 74).

    C.    <u>Analysis and Conclusions</u>

5

The scope of discovery is, of course, within the broad discretion of the trial court. *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). "An order denying further discovery will be grounds for reversal only if it was an abuse of discretion resulting in substantial prejudice." *Id.* (citation and quotation omitted). "The scope of examination permitted under Rule 26(b) is broader than that permitted at trial. The test is whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence." *Lewis*, 135 F.3d at 402, citing, *Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499, 501 (6th Cir. 1970).

Several of plaintiff's discovery requests relate to other grievances and complaints filed by other prisoners regarding the dialysis unit and certain KRS employees. (Dkt. 74). There appears to be no dispute that the discovery sought is relevant. The KRS defendants claim that they have no access to this information, but the MDOC defendants object on the grounds that the requests are overly broad because no time frame was specified, they claim that every grievance would have to be reviewed to determined if the grievance at issue involved in the dialysis unit because grievances are filed by grievance number, not subject matter, and, the MDOC defendants object to providing complaints and grievances regarding the dialysis unit from other prisoners for safety, security, and privacy reasons. (Dkt. 71-4). Plaintiff argues that his requests are not unduly burdensome because KRS only operated in the correctional facility at issue for a closed period of time

6

(although that period of time is unclear). Plaintiff also argues that this is not a privacy or security issue because grievances can be obtained via the Freedom of Information Act.

With respect to privacy and security issues, regarding motions to dismiss based on exhaustion of administrative remedies, counsel for the MDOC regularly argues in this Court that grievances are considered "public records" and should not be considered materials outside the scope of a plaintiff's complaint for purposes of such a motion. Thus, the Court finds the MDOC defendants' argument regarding security and privacy to be without merit.

While the MDOC claims that all grievances are only filed by grievance number, they provide no documentation to this effect. The party resisting discovery bears the burden of demonstrating why the request is unduly burdensome or otherwise not discoverable under the Federal Rules. *See e.g. Waddell v. Greyhound Lines, Inc.*, 2008 WL 4982633, *1 (W.D. Tenn. 2008). Moreover, according to the grievance procedure as it relates to medical care issues, at Steps II and III, grievances are sent to the Regional Healthcare Administrator or the Prisoner Affairs Section, and the Bureau of Health Care Services (BHCS). The undersigned finds it difficult to believe that none of these agencies have computerized or other record-keeping systems that would allow the MDOC defendants to search for grievances lodged against defendants arising from

practices or incidents involving KRS. Thus, the Court concludes that the MDOC defendants have not met their burden of establishing that plaintiff's requests are unduly burdensome. The Court does believe, however, that a reasonable time frame should be placed on the scope of plaintiff's requests relating to grievance materials filed by other prisoners involving KRS. Thus, the Court **ORDERS** the MDOC defendants supplement their answers to Requests for Production Nos. 1 and 2 for the time frame of two years before plaintiff's needle stick incident on October 13, 2006 and one year after that incident. The MDOC defendants must supplement their answers by **January 11, 2009.**

In Document Request No. 3, plaintiff asks for all policies regarding the operation of the dialysis unit in MDOC facilities. The MDOC defendants identified and provided copies of the responsive procedures. Thus, plaintiff's request for additional materials is **DENIED**.

In Document Request No. 4, plaintiff asks for a copy of the contract between MDOC and KRS. The MDOC objects on safety and security grounds. The KRS defendants, however, have indicated that they will provide a copy of this contract to plaintiff and attached it to their response to plaintiff's motion to compel. (Dkt. 70-5). Thus, plaintiff's motion to compel in this regard is **DENIED** as moot.

In Document Request No. 5, plaintiff also requests copies of all documents involving current or past lawsuits involving the KRS defendants. While the

8

MDOC defendants object to this request as overly broad and unduly burdensome, the KRS defendants have indicated that no such lawsuits exist. (Dkt. 70-4). Defendants cannot produce what appears to be non-existent. Thus, the Court concludes that plaintiff's motion to compel is **DENIED** in this regard.

Plaintiff objects to the MDOC's responses to Document Request Nos. 6 and 7. It appears, however, that the MDOC identified and provided the responsive documents and that plaintiff simply believes that the MDOC did not follow the correct procedures and failed to create certain documents in accordance with those procedures. Even if true, the MDOC cannot produce what does not exist. Plaintiff's motion to compel is **DENIED** regarding Request Nos. 6 and 7.

With respect to Document Request No. 8, plaintiff claims that he did not receive a copy of his Step I, II, and III grievances for Grievance No. JMF 06-10-2156-12z. These materials were attached to defendants' January 28, 2008 motion for summary judgment, which was served on plaintiff and to which he responded. (Dkt. 21-3). Thus, the Court **DENIES** plaintiff's motion to compel with regard to Document Request No. 8.

In the second Document Request No. 7 (which was apparently misnumbered), plaintiff asks for copies of all his medical records. The MDOC defendants object to providing such documents to plaintiff because there is procedure for plaintiff to obtain such records himself. Plaintiff argues that he had

9

to provide a release for such records to defendants and that he should have access to copies of what defendants obtained. The undersigned agrees with plaintiff and orders the MDOC defendants to provide copies of plaintiff's medical records by **December 21, 2009**.[2]

In Document Request No. 9, plaintiff asks for all documents created by any MDOC or KRS staff from October 13, 2006 forward concerning plaintiff's medical care, not already included in other responses. The MDOC defendants object to the extent that any such documents, if they exist, might be privileged. The KRS defendants state that no such documents exist, to their knowledge.

The Court finds the MDOC's answer to be incomplete. With respect to documents relating to the October 13, 2006 incident that were created after plaintiff's lawsuit was filed, the Court concludes that such documents need not be produced or placed on a privilege log because they would clearly be protected by at least the work product privilege.[3] If responsive documents do exist that were

---

[2] This disposition renders plaintiff's motion for medical records moot. (Dkt. 73).

[3] The "work product" privilege or doctrine is codified in Fed.R.Civ.P. 26(b)(3). The common law work product doctrine was intended to "permit an attorney to 'assemble information, sift what [he or she] considers to be the relevant facts, prepare [his or her] legal theories and plan [his or her] strategy without undue and needless interference ... to promote justice and to protect [his or her] clients' interests.'" *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006), quoting, *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). The current scope of this doctrine, at least in civil cases, appears to go beyond the work of an attorney and "as set forth in Federal Rule of Civil Procedure 26(b)(3), protects from discovery

10

created *before* plaintiff's lawsuit was filed and they have not been otherwise produced, then the MDOC defendants need to identify and produce those documents or identify those documents on a proper privilege log that complies with Federal Rule of Civil Procedure 26(b)(5). If, after conducting a reasonable inquiry in accordance with its obligations under the discovery rules, it is concluded that no such documents exist, then the MDOC must amend its answer to clearly say as such. The MDOC must provide a supplemental response to Request No. 9 by **December 21, 2009**.

In his addendum to the motion to compel, plaintiff requests a copy of his deposition transcript. (Dkt. 77). The MDOC defendants have not indicated any objection to this request. The undersigned orders the MDOC defendants to provide a copy of plaintiff's deposition transcript to him by **December 21, 2009**.

As set forth above, plaintiff's motion to compel (Dkt. 65) is **DENIED IN PART** and **GRANTED IN PART** as to the MDOC defendants. Plaintiff's motion to compel (Dkt. 65) as to the KRS defendants is **DENIED**. Plaintiff's motion to compel medical records (Dkt. 73) is **DENIED** as moot.

---

documents and tangible things prepared in anticipation of litigation by or for a party or by or for that party's representative." *Roxworthy*, 457 F.3d at 593. As reflected in the rule, the potential "representatives" of a party include an "attorney, consultant, surety, indemnitor, insurer, or agent." At a minimum, the filing of a lawsuit is a triggering device for the work product protection of communications. *See e.g.*, *Arkwright Mutual Ins Co. v. National Union Fire Ins. Co.*, 1994 WL 58999 (6th Cir. 1994)

**IT IS SO ORDERED**.

The parties to this action may object to and seek review of this Order, but are required to file any objections within 14 days of service as provided for in Federal Rule of Civil Procedure 72(b)(2). A party may not assign as error any defect in this Order to which timely objection was not made. Fed.R.Civ.P. 72(a). Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection. Pursuant to Local Rule 72.1(d)(2), any objection must be served on this Magistrate.

Date: December 10, 2009                s/Michael Hluchaniuk
                                       Michael Hluchaniuk
                                       United States Magistrate Judge


**CERTIFICATE OF SERVICE**

I certify that on December 10, 2009 I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Michael R.Dean and Jonathan N. Wayman, and I certify that I have mailed by United States Postal Service the foregoing pleading to the plaintiff, a non-ECF participant, at the following address: Randell Binion, # 191925, MOUND CORRECTIONAL FACILITY, 17601 Mound Road, Detroit, MI 48212.

                                       s/Tammy Hallwood
                                       Tammy Hallwood
                                       Case Manager
                                       U.S. District Court
                                       600 Church Street
                                       Flint, MI 48502
                                       (810) 341-7887
                                       tammy_hallwood@mied.uscourts.gov