UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDELL BINION,

      Plaintiff,

v.

ALEX GLOVER, SHERRY BURT,
JOHN OCWIEJA, PATRICIA
CARUSO, DR. MIDDLEBROOK, and
KIDNEY REPLACEMENT SERVICES,

      Defendants.

_____/

Case No. 07-13443

David M. Lawson
United States District Judge

Michael Hluchaniuk
United States Magistrate Judge

## REPORT AND RECOMMENDATION
## DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (Dkt. 62, 63)

## I.  PROCEDURAL HISTORY

The present complaint was filed by plaintiff Randell Binion, a prisoner in the

custody of the State of Michigan, on August 17, 2007.  (Dkt. 1).  Pursuant to 42

U.S.C. § 1983, plaintiff seeks damages against defendants Sherry Burt, John

Ocwieja, Patricia Caruso (employees of the Michigan Department of Corrections),

along with Kidney Replacement Services, Inc. (KRS) and two of its employees,

Alex Glover and Dr. Middlebrook, based on allegations that he was denied certain

rights under the United States Constitution.[1]

_____

[1] Plaintiff also filed a complaint (originally assigned Case No. 07-13974)
against the same defendants arising from the same facts.  (Dkt. 7).  By order of the
Court, all pleadings associated with Case No. 07-13974 were re-filed with this

Plaintiff sought to proceed under the provisions of 28 U.S.C. § 1915(a), which allows a party to file a complaint without payment of customary court fees. (Dkt. 2). On September 4, 2007, plaintiff's application to proceed *in forma pauperis* was granted. (Dkt. 3). District Judge David M. Lawson referred this matter to Magistrate Judge Steven D. Pepe for all pre-trial matters on October 12, 2007. (Dkt. 10). On January 14, 2008, this matter was reassigned to the undersigned. (Dkt. 19).

In this case, plaintiff alleges that the MDOC defendants failed to ensure that the policies and procedures to be employed following exposure to bloodborne pathogens were followed, which included drawing his blood for testing, scheduling post-exposure follow-up and appropriate post-test counseling, filing a critical incident report, a review of the incident by MDOC officials, and taking appropriate corrective action. Defendants Burt, Ocwieja, and Caruso (the MDOC defendants) filed a motion for summary judgment on January 28, 2008, arguing, *inter alia*, that plaintiff failed to exhaust his administrative remedies and that none of the defendants were personally involved in the incident in question. (Dkt. 21, 22). Defendants Glover, Middlebrook, and KRS (collectively, the Healthcare defendants) filed a Notice of Joinder/Concurrence in the Motion for Summary

---

matter and Case No. 07-13974 was administratively closed. (Dkt. 6). The two complaints appear virtually identical.

Judgment on April 1, 2008. (Dkt. 29). The undersigned recommended that defendants' motions for summary judgment be denied, which recommendation was adopted. (Dkt. 39, 42). Specifically, the undersigned concluded that plaintiff had exhausted his administrative remedies and that the MDOC defendants fail to offer any evidence in support of their motion for summary judgment that they were not involved, or were not in any way responsible for taking the corrective action required in the exposure control procedures. (Dkt. 39). And, given that the MDOC defendants failed to either offer any evidence to show who is responsible (and who is not) for ensuring that appropriate investigations, responses, and follow-up care are provided where an exposure to bloodborne pathogens occurs, or offer any evidence that they are excluded from the group of potentially responsible persons, the undersigned concluded that summary judgment in their favor was premature. The undersigned also concluded that the KRS defendants, as contract providers of dialysis services, were acting under color of state law and had failed to provide any evidence to otherwise support their motion for summary judgment. (Dkt. 39).

On July 15, 2009, after conducting discovery, defendants renewed their motions for summary judgment. (Dkt. 62, 63). Plaintiff filed a response to the KRS defendants' motion for summary on August 25, 2009. (Dkt. 72). Plaintiff did not file a response to the MDOC defendants motion for summary judgment,

despite receiving an extension of time until October 13, 2009 to file a response. (Dkt. 69). On December 14, 2009, appointed counsel appeared on behalf of plaintiff. (Dkt. 80, 81). On February 3, 2009, the undersigned issued an order allowing the parties to file supplemental briefs on the pending motions for summary judgment by February 17, 2009. None of the parties elected to do so. These matters are now ready for report and recommendation

For the reasons set forth below, it is **RECOMMENDED** that the MDOC defendants' motion for summary judgment be **GRANTED**, that Dr. Middlebrook's motion for summary judgment be **GRANTED** in part, and that the KRS defendants' motion for summary judgment be **DENIED**.

## II.    STATEMENT OF FACTS

### A.    Plaintiff's Complaint

Plaintiff is housed at the Southern Michigan Correctional Facility (JMF) in Jackson, Michigan. He worked in the dialysis services center operated by KRS and claims that, on October 13, 2006, around 10:30 p.m., his arm was stuck with a dirty needle that had been improperly disposed of in a waste paper basket, instead of the designated receptacle for biohazardous materials (i.e. sharps container, which is a plastic container, often red, with a biohazard symbol on the outside.). (Dkt. 1, p. 4). While emptying the waste paper basket, plaintiff felt a "prick" on his arm and then saw blood trickling down his forearm. *Id.* Plaintiff, along with

defendant Glover and two dialysis technicians, observed the bloody needle. *Id.* According to plaintiff, defendant Glover informed a dialysis technician to take the bloody needle and place it in the proper container. *Id.* at 5.

Plaintiff claims that MDOC policies and procedures were violated in several respects: (1) the bloody needle was not properly disposed of in the biohazardous waste container; (2) plaintiff did not receive medical attention after his exposure to possible blood borne pathogens within one hour; and (3) the bloody needle should have been brought to the hospital for testing for communicable diseases. *Id.* Plaintiff asks for money damages and an injunction requiring defendants to put safety procedures and policies in place that provide for immediate medical care and attention in future similar situations. (Dkt. 1, p. 14).

B.    Plaintiff's Grievance

Plaintiff's Step I grievance is dated October 18, 2006. (Dkt. 21, Ex. 1, p. 6). He claims that, in the course of his duties as a dialysis porter, while emptying a trash receptacle, he was punctured with a used needle and complains that "[p]rocedures require that needles not be placed in the common trash but rather placed in bio-needle containers for disposal." *Id.* He reported the incident to "C/O Hall" and "RN Alex Glover." *Id.* Plaintiff also complained that no follow-up tests were ordered and no investigation or critical incident report was prepared regarding this incident. (Dkt. 21, Ex. 1, p. 7). He further wrote that the "dialysis

unit is a guest of the MDOC and must follow all MDOC [policies] and procedures while providing health care to prisoners." *Id*. Plaintiff requested relief in the form of follow-up testing, the development of a needle disposal procedure, a copy of the critical incident report, and no retaliation for the grievance. *Id*. The MDOC does not attach a copy of any response to the Step I grievance.

Apparently, when plaintiff did not receive a response to the Step I grievance, he filed a Step II grievance on January 11, 2007. (Dkt. 21, Ex. 1, pp. 3-4). The copy of the first portion of the plaintiff's Step II grievance, as provided by the MDOC defendants, is illegible, but the second page states in part that "Respondent failure [sic] to respond to asserted claims within grievance JMF 06 10 2145 12z Constitutes the admission of guilt, negligence, and/or culpability." *Id*. at 4. After review of the Step II grievance, Alfred Jones (the respondent) wrote:

> A review of Mr. Binion's medical record reveals the needle stuck incident was reported to medical on 10-13-06. Grievant was sent to Foote Hospital Emergency Room and was evaluated for post exposure. On 10-14-06 Mr. Binion was returned from Foote ER. Mr. Binion was given post exposure medication.

(Dkt. 21, Ex. 1, p. 5). Mr. Jones concluded that "[a]ppropriate treatment was provided for grievant's health care issue. Based on the above, your grievance is considered denied at Step II." *Id*.

Plaintiff filed Step III appeal for two reasons. First, he stated that he did not

receive post-exposure medication within one hour of exposure, as required by

MDOC Operating Procedure 03.04.120(B) and he has no idea whether he

contracted any infectious diseases, including Hepatitis and HIV.  (Dkt. 21, Ex. 1, p.

3).  Second, he stated that the needle should not have been in the trash according to

Operating Procedure 03.04.120-19 and JMF should have trained the dialysis staff

to follow this procedure.[2]  *Id.*  MDOC personnel "N. Martin" prepared a response

dated April 10, 2007, stating that "[b]ased upon the information gathered upon

review, this matter will be reviewed further for quality assurance purposes."  (Dkt.

21, Ex. 1, p. 2).  The Step III response was signed and approved by "J. Armstrong"

and copied to the Warden and the Regional Health Care Administrator.  *Id.*

    C.    MDOC Policy Directives on Exposure to Bloodborne Pathogens

    The MDOC defendants submitted copies of MDOC Policy Directive

03.04.120, "Control of Communicable Bloodborne Diseases" and Operating

Procedure 03.04.120C, "Management of Prisoners' Exposure to Bloodborne

Pathogens."  (Dkt. 22, Ex. 6, Attachments A and B).  MDOC Policy Directive

03.04.120 establishes an "exposure control plan," delineates when testing of

employees and offenders is appropriate, and requires staff to immediately report

---

[2]  It is unclear from the record whether the MDOC policies and procedures
plaintiff identifies as "03.04.120(B)" and "03.04.120-19" are the same as or
different from those produced by the MDOC defendants and attached to their
motion for summary judgment, which are numbered 03.04.120 and 03.04.120C.

any exposure.  *Id*. at Ex. 6, Attachment A, p. 3.  It also requires the observance by all staff of "universal precautions"[3] to control bloodborne infections and diseases by reducing the risk of contact with blood or other potentially infectious material from "potentially contaminated sharps."  (Dkt. 22, Ex. 6, Attachment A, p. 2).  The exposure control plan must be distributed to all wardens and administrators affected by the plan.  Each warden or administrator must designate an appropriate staff person to monitor and ensure compliance with the exposure control plan.  This individual must promptly notify any appropriate wardens or administrators of any non-compliance.  *Id*.  In the event of exposure, the procedure requires that employees begin receiving necessary treatment within one hour after the exposure.  *Id*.  Offenders must be immediately referred to the appropriate health care clinic.  *Id*.  After an exposure incident, the Warden, the Regional Medical Director, the Chief Medical Officer, and the Field Operations Administration Deputy Director must meet and review any occupational exposures to ensure that appropriate

---

[3] According to the Center for Disease Control, "universal precautions" are:

> a set of precautions designed to prevent transmission of human immunodeficiency virus (HIV), hepatitis B virus (HBV), and other bloodborne pathogens when providing first aid or health care.  Under universal precautions, blood and certain body fluids of all patients are considered potentially infectious for HIV, HBV and other bloodborne pathogens.

*See* http://www.cdc.gov/ncidod/dhqp/bp_universal_precautions.html.

corrective action is taken.  *Id*. at 3.

The Operating Procedure sets forth a specific protocol for action when prisoners are exposed to blood and other bodily fluids.  *Id*. at Ex. 6, Attachment B. After the MDOC staff recognizes that an exposure incident has occurred, the prisoner must be instructed to cleanse the exposed area and staff must immediately report the incident to health care personnel, just as with an emergency.  *Id*. at 2.  A nurse must then wash the exposed area thoroughly and notify the Medical Service Provider (MSP), if available.  If no MSP is available, the prisoner must be sent to the local emergency room for evaluation.  *Id*.  If MSP continues to handle the matter, post-exposure prophylactic medications must be administered by the nurse within one hour of exposure, if appropriate.  *Id*.  In addition, blood must be drawn for testing and post-test counseling and post-exposure follow up for the prisoner must be scheduled on receipt of the lab results.  *Id*. at 3.

D.    Motions for Summary Judgment

The MDOC Defendants state that, right after the incident on October 13, 2006, defendant Glover assessed plaintiff's wound and noticed a small amount of blood. (Dkt. 62, Ex. A).  Glover cleansed plaintiff's wound with alcohol and peroxide after he washed his hands with 1% bleach water. *Id*.  Glover called Duane Waters Hospital and spoke with healthcare staff regarding plaintiff's needle stick. *Id*.  The Physician's Assistant approved the plaintiff to be sent over for evaluation.

*Id*.  Glover called control center and reported why Plaintiff needed to be sent out and it was agreed to transport Plaintiff for emergent treatment.  *Id*.  The JMF Control Center log book indicates that a van was arranged to transport Plaintiff to Foote Hospital at 2251 hours (10:51 p.m.), which is 21 minutes after the incident occurred.  (Dkt. 62, Exs. B, C).  The van arrived at 0017 (12:17 a.m.) hours.  (Dkt. 62, Ex. C).  Plaintiff returned from Foote Hospital at 0530 hours.  *Id*.

After the needle stick incident, plaintiff was seen by MDOC healthcare professionals on at least three separate occasions before the end of October.  On October 16, plaintiff was seen by RN Aiken Subrina, who noted on his record that prophylactic medications had been administered. (Dkt. 62, Exs. D, E).  On October 20, plaintiff was seen by PA Terilynn D. Hillis, who lab orders for an HIV test and a Hepatitis Panel were scheduled for approximately April 27, 2007.  (Dkt. 62, Ex. F).  On October 31, 2006, plaintiff was seen by Dr. David A. Komjathy, who noted in his medical records that plaintiff had been "given an 'HIV prevention kit' and took all medications (for several days)."  (Dkt. 62, Ex. G).  Plaintiff was given post-exposure counseling on October 31, 2006 by Dr. Komjathy, as noted in his records: "Pt [patient] was educated and [questions] answered.  I did mention that pt's chances of seroconversion were greates[t] w/ HBV, and least w/ HIV (0.3% if from a known positive source)."  *Id*.  On April 28, 2007, the lab results for plaintiff's blood tests done on April 24, 2007 came back negative for HIV,

Hepatitis B, and Hepatitis C. (Dkt. 62, Ex. H). At a December 3, 2008 deposition of plaintiff, he admits that he received medication at Foote Hospital after the incident, and that he received tests for HIV by MDOC healthcare officials within six months of the potential exposure and subsequent tests for HIV and Hepatitis C. (Dkt. 62, Ex. I).

Defendants argue that plaintiff does not satisfy the subjective prong of a deliberate indifference analysis because he fails to establish that his medical treatment rose to the level of a constitutional violation. According to defendants, the evidence is clear that following the incident of October 13, 2006, plaintiff was taken, on orders by the MDOC, to Foote Hospital for treatment. There he was administered prophylactic medications for a potential blood borne pathogen exposure incident within a couple of hours. According to the Centers for Disease Control and Prevention, after a potential exposure incident to HIV, it is recommended that treatment "should be started as soon as possible, preferably within hours as opposed to days, after the exposure." Plaintiff was treated with prophylactic medications well within the recommended 24-36 hour time frame and thus, defendants argue that plaintiff can state no claim that his post-exposure treatment was constitutionally defective. Rather, there is a mere disagreement over the course of treatment, which does not rise to the level of an Eighth Amendment violation.

Defendants point out that in previously recommending that summary judgment be denied, the undersigned opined that "plaintiff alleges that the MDOC defendants failed to ensure that the post-exposure policies and procedures were followed, which included drawing his blood for testing, scheduling post-exposure follow-up and appropriate post-test counseling, filing a critical incident report, a review of the incident by MDOC officials, and taking appropriate corrective action," and "the MDOC defendants fail to offer any evidence in support of their motion for summary judgment that they were not involved, or were not in any way responsible for taking the corrective action required in the exposure control procedures." The MDOC defendants now argue that plaintiff was seen by MDOC healthcare professionals on October 16, October 20, and October 31 of 2006 and that he received medical evaluations and continuation of his prophylactic medications that were first administered by Foote Hospital.

Defendants also point out that, on April 28, 2007, the lab results for plaintiff's blood tests done on April 24, 2007 came back negative for HIV, Hepatitis B, and Hepatitis C. This suggests, according to defendants, that the prophylactic measures and medical treatment by MDOC personnel were either completely successful in preventing the plaintiff from becoming infected by HIV or Hepatitis B or C, or that plaintiff was never in danger of infection because he was not exposed to a contaminated needle. Defendants argue that, regardless of

whether every MDOC policy was strictly adhered to regarding a critical incident report being made after the fact, plaintiff was given all of the medically necessary treatment to prevent infection.

With respect to plaintiff's claims of supervisory liability for nonmedical MDOC personnel, defendants argue that there must be an underlying violation for them to "turn a blind eye to." Here, where plaintiff was provided with constitutionally sufficient medical care after his potential exposure by MDOC healthcare professionals, the MDOC defendants argue that there can be no constitutional violation by persons with supervisory responsibilities.

In his motion for summary judgment, Dr. Middlebrook asserts, with a supporting affidavit, that he was not at the prison dialysis unit, a remote location of KRS, that he had no foreknowledge of conditions there, and he no knowledge of the incident underlying this action until it was later reported. (Dkt. 63, Ex. A). Dr. Middlebrook argues that, without any personal, active involvement in either the incident or the circumstances precipitating it, plaintiff cannot show that he encouraged, participated in, authorized, approved or knowingly acquiesced in the conduct or practices alleged, or otherwise acted to deny the plaintiff his rights under the Eighth Amendment. (Dkt. 63). The remaining defendants, Alex Glover and Kidney Replacement Services, adopt the motion for summary judgment filed by the MDOC defendants and apparently request summary judgment in their favor

on this basis.

E.    <u>Plaintiff's Response</u>

Plaintiff's only response to the motions for summary judgment merely

argues that the KRS defendants failed to respond to the previous report and

recommendation issued by the undersigned and, therefore, they are barred from

bringing this motion for summary judgment.  Plaintiff did not file any response to

the MDOC's motion for summary judgment.

## III.   ANALYSIS

A.    <u>Standard of Review</u>

Summary judgment is appropriate under Rule 56(b) "if the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as

a matter of law."  Fed.R.Civ.P. 56(c).  In *Copeland v. Machulis*, 57 F.3d 476, 478-

79 (6th Cir. 1995), the court stated the standard for deciding a motion for summary

judgment:

> The moving party bears the initial burden of establishing
> an absence of evidence to support the nonmoving party's
> case.  Once the moving party has met its burden of
> production, the non-moving party cannot rest on its
> pleadings, but must present significant probative
> evidence in support of the complaint to defeat the motion
> for summary judgment.  The mere existence of a scintilla
> of evidence to support plaintiff's position will be
> insufficient; there must be evidence on which the jury

could reasonably find for the plaintiff.

A genuine issue of material fact exists only when, assuming the truth of the non-moving party's evidence and construing all inferences from that evidence in the light most favorable to the non-moving party, there is sufficient evidence for a trier of fact to find for the non-moving party. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

"In deciding a motion for summary judgment, [the] court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). This is not to say that some credibility determinations are beyond what is appropriate in deciding a motion for summary judgment. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1774, 1776 (2007).

Rule 56 limits the materials the Court may consider in deciding a motion under the rule: "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995) (citation omitted). Moreover, affidavits must meet certain requirements:

A supporting or opposing affidavit must be made on

> personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.

Fed.R.Civ.P. 56(e)(1). In accordance with Rule 56(e), the Sixth Circuit has held "that documents submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e); otherwise, they must be disregarded." *Moore v. Holbrook,* 2 F.3d 697, 699 (6th Cir. 1993). Thus, in resolving a Rule 56 motion, the Court should not consider unsworn or uncertified documents, *Id.*, unsworn statements, *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-969 (6th Cir. 1991), inadmissible expert testimony, *North American Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1280 (6th Cir. 1997), or hearsay evidence, *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996); *Wiley v. United States*, 20 F.3d 222, 225-226 (6th Cir. 1994). *See Tolliver v. Federal Republic of Nigeria*, 265 F.Supp.2d 873, 879 (W.D. Mich. 2003). Thus, "[a] party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to create a genuine issue of material fact." *Id*., quoting, *Sperle v. Michigan Dept. of Corrections*, 297 F.3d 483, 495 (6th Cir. 2002) (internal citation and quotation marks omitted).

B.    Constitutional Deprivation

With respect to the second element[4] of a § 1983 claim, the Supreme Court

has recognized the responsibility of the courts "to scrutinize claims of cruel and

unusual confinement."  *Rhodes v. Chapman*, 452 U.S. 337, 352 (1981).  Included

as a type of conduct that violates the Eighth Amendment is a prison official's

deliberate indifference to a prisoner's serious medical needs.  *See e.g.*, *Estelle v.*

*Gamble*, 429 U.S. 97 (1976); *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976).

Additionally, deliberate indifference to an excessive risk of serious harm in a

prison work environment may violate the Eighth Amendment.  *See e.g.*, *Choate v.*

*Lockhart*, 7 F.3d 1370, 1373 (8th Cir. 1993) (Prison work assignments are

considered conditions of confinement subject to scrutiny under the Eighth

Amendment.); *Terrill v. Bertissi*, 2005 WL 3277990 (W.D. Mich. 2005) (same).

Plaintiff essentially asserts three claimed violations of the Eighth

Amendment:  (1) the bloody needle was not properly disposed of in the

biohazardous waste container in violation of MDOC policy and that this was a

regular pattern in the kidney dialysis unit; (2) plaintiff did not receive medical

attention after his exposure to possible bloodborne pathogens within one hour, in

violation of MDOC policy; and (3) there was no follow-up care or testing

---

[4] The first element, that defendants acted under color of state law, is not
disputed.

performed for any diseases and no corrective action taken in accordance with

MDOC policy. Plaintiff's latter two claims implicate the doctrine of deliberate

indifference to a serious medical need and the first falls into the category of

deliberate indifference to a substantial risk of harm in a prison workplace.[5]

Plaintiff must satisfy both an objective and subjective test to establish a

constitutional deprivation. To meet the objective prong, a plaintiff must

demonstrate that he has been incarcerated under conditions posing a substantial

risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Dr.

Middlebrook does not appear to dispute that plaintiff has satisfied the objective

prong of the deliberate indifference test. In order to defeat summary judgment,

plaintiff must also, however, satisfy the second prong of the *Farmer* test, which is

a subjective one, requiring plaintiff to demonstrate that Dr. Middlebrook acted with

deliberate indifference. To meet this prong, plaintiff must show that: 1) a prison

official knew of and disregarded an excessive risk to inmate health or safety; 2) the

official was aware of facts from which an inference could be drawn that a

substantial risk of serious harm exists; and 3) the official also drew the inference.

*Farmer*, 511 U.S. at 837. Thus, "deliberate indifference describes a state of mind

---

[5] Plaintiff appears to assert this claim only against the Healthcare defendants
and not against the MDOC defendants. None of the defendants have moved for
summary judgment on this claim, except for Dr. Middlebrook in his individual
capacity. Thus, the claim will not be addressed beyond the scope of Dr.
Middlebrook's motion.

more blameworthy than negligence," and requires "more than ordinary lack of due care for prisoner's interests or safety." *Id.* at 835 (citations omitted).

Plaintiff may establish the subjective factor in several ways. As the Supreme Court explained, whether "a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842 (internal citation omitted). Dr. Middlebrook offers an affidavit in which he attests that he was not at the prison dialysis unit, a remote location of KRS, that he had no foreknowledge of conditions there, and he no knowledge of the incident underlying this action until it was later reported. (Dkt. 63, Ex. A). In response, plaintiff does not offer any evidence. Rather, his only argument is that Dr. Middlebrook failed to object to the undersigned's earlier report and recommendation and therefore, this matter should be tried. The undersigned suggests that nothing in the report and recommendation or the order adopting it, suggests that Dr. Middlebrook was precluded from resubmitting his motion for summary judgment. The undersigned further suggests that plaintiff has failed to establish any genuine issue of material fact that Dr. Middlebrook was not sufficiently personally involved in the events at issue to sustain a claim of deliberate indifference. Thus, Dr. Middlebrook's motion for summary judgment as

to plaintiff's claim against him in his individual capacity[6] should be granted.

   2.   Post-Exposure Medical Treatment Issues.[7]

Also included as a type of conduct that violates the Eighth Amendment is a prison official's deliberate indifference to a prisoner's serious medical needs. *See, e.g.*, *Estelle v. Gamble*, 429 U.S. 97 (1976); *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976). As set forth above, to succeed on a claim of deliberate indifference, plaintiff must satisfy both an objective and a subjective test. He must first show that he had a serious medical need and he must also show that a

_____

[6] As previously noted in the 2008 report and recommendation, with respect to plaintiff's claims against KRS and Dr. Middlebrook (in his official capacity), a claim under § 1983 cannot be based on a theory of *respondeat superior* or vicarious liability. *Moore v. Michigan Dep't of Corrections*, 2007 WL 3124649, *4 (W.D. Mich. 2007), citing, *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 98 (1978). Rather, under *Monell*, liability against an entity or an agent in his official capacity can only be found in situations where a deprivation of constitutional rights occurs as a result of an entity's policy, custom, or practice. *Raub v. Correctional Medical Services*, 2008 WL 160611, *2 (E.D. Mich. 2008), citing, *Monell*, at 694. Again, none of the KRS defendants offer any evidence to support a motion for summary judgment on plaintiff's claim that they engaged in a pattern and practice of improperly disposing of dirty needles and syringes and subjected him to an unreasonable risk of harm in his prison workplace. At best, the KRS defendants adopt the motion of the MDOC defendants, in which they argue essentially, that the medical evidence suggests "no harm, no foul." However, an Eighth Amendment violation does not necessarily require actual physical harm. Rather, the standard is whether a plaintiff was subjected to an unreasonable *risk* of harm. *See Helling, supra.* None of the briefing addresses this point and the undersigned suggests that it need not be addressed further by the Court until the parties have fully briefed and explored this issue.

[7] Plaintiff appears to assert these claims only against the MDOC defendants. *See* Dkt. 1.

defendant, being aware of that need, acted with deliberate indifference to it. *Wilson v. Seiter*, 501 U.S. 294, 300 (1991).

With respect to the objective factor, a medical need is "serious" if it has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention. *Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.), *cert. denied*, 486 U.S. 1006 (1988). A serious ailment requires immediate attention or is potentially life-threatening: "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (citation omitted), overruled on other grounds, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

The exposure control policy mandates that the blood of an exposed prisoner must be drawn for testing, that post-exposure follow-up must be scheduled, that appropriate post-test counseling for the prisoner must be scheduled on receipt of the lab results, that a critical incident report must be filed, and that MDOC officials must review the matter and take appropriate corrective action. Plaintiff's grievances allege that no testing or follow-up was done either with respect to his care or with respect to any investigation and corrective action. Under these circumstances, plaintiff alleges a failure to treat his "serious" medical need, given

his allegations that defendants' failure to conduct any testing for bloodborne pathogens after his exposure "could result in further significant injury." *McGuckin*, 974 F.2d at 1059; *see also Damiano v. Lewis*, 1998 WL 321734, *1 (9th Cir. 1998) (Prisoner established questions of material fact as to whether prison officials were deliberately indifferent to his serious medical needs by "failing to administer a test for Hepatitis C earlier than one and a half years after he was punctured with a needle..."). Previously, defendants presented no evidence to dispute plaintiff's allegations and evidence in this regard. Now, they have come forward with extensive medical documentation regarding plaintiff's post-exposure treatment and testing. Plaintiff has offered no evidence to rebut defendants' motion. The undersigned suggests that plaintiff cannot show that the MDOC defendants acted with deliberate indifference with respect to any part of his post-exposure care and treatment. The undersigned further suggests that the MDOC defendants are correct that, where no constitutional violation occurred, there can be no supervisory liability. Summary judgment in favor of the MDOC defendants should, therefore, be granted.[8]

E.    Qualified Immunity.

Defendants claim to be entitled to qualified immunity regarding their actions

---

[8] Given that plaintiff does not assert a policy, pattern, and practice claim against the MDOC defendants, should the Court adopt this report and recommendation, all claims against them will be resolved.

in this case. The doctrine of qualified immunity means that "'[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992), quoting, *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Defendants bear the burden of pleading qualified immunity, but plaintiff bears the burden of showing defendants are not entitled to qualified immunity. *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002).

The Supreme Court had established a two-part test in order to determine whether qualified immunity was applicable to a particular situation. *Saucier v. Katz*, 533 U.S. 194 (2001). The first part of the test involved a determination of whether the facts of the case, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." *Id*. at 201. If the first question was resolved in the affirmative then the court would decide "whether the right was clearly established." *Id*. If both questions are resolved in the affirmative, then the doctrine of qualified immunity does not apply and the case can proceed.

Recently, the Supreme Court revisited their decision in *Saucier* and concluded that mandatory order of the two part test for determining if qualified immunity applied was no longer sound based on several factors including judicial

economy.  *Pearson v. Callahan*, — U.S. —, 129 S.Ct. 808 (2009).  While not modifying the factors that should be considered in such a decision, the Court held that sometimes it makes sense to allow the second part of the test to be decided first and that such a decision may resolve the controversy without having to address the first part of the test.  In *Pearson*, the § 1983 claim of the plaintiff was based on an allegedly unlawful search conducted by the defendant police officers. Without having to engage in the perhaps more complicated decision of determining whether plaintiff's constitutional rights had been violated, the Court found that the constitutional right claimed by plaintiff was not clearly established where lower court case law was consistent with the conduct of the officers and "principles of qualified immunity [should] shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law."

The undersigned suggests that, given the foregoing conclusions regarding plaintiff's claims, the MDOC defendants and Dr. Middlebrook (in his individual capacity) are entitled to qualified immunity.  The only claims that remain are those against defendant Glover in his individual capacity and the KRS defendants in their official capacity.  The undersigned suggests that defendant Glover has not sufficiently briefed the issue of qualified immunity and it should not be further addressed at this time.  As to the claims against the KRS defendants in their official capacity, qualified immunity is not applicable.

## IV.   RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that the MDOC defendants motion for summary judgment be **GRANTED**, that Dr. Middlebrook's motion for summary judgment be **GRANTED** in part, and that the KRS defendants' motion for summary judgment be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Administrative Order

09-AO-042. The response must specifically address each issue raised in the

objections, in the same order, and labeled as "Response to Objection No. 1,"

"Response to Objection No. 2," etc. If the Court determines that any objections are

without merit, it may rule without awaiting the response.

Date: February 23, 2010                                 s/Michael Hluchaniuk
                                                        Michael Hluchaniuk
                                                        United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

     I certify that on <u>February 23, 2010</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Jules B. Olsman, Michael R.Dean and Jonathan N. Wayman</u>, and I certify that I have mailed by United States Postal Service the foregoing pleading to the plaintiff, a non-ECF participant, at the following address: <u>Randell Binion, #191925, MOUND CORRECTIONAL FACILITY, 17601 Mound Road, Detroit, MI  48212</u>.

s/Tammy Hallwood
Case Manager
U.S. District Court
600 Church Street
Flint, MI 48502
(810) 341-7887
tammy_hallwood@mied.uscourts.gov
